IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 7, 2019

**STATE OF TENNESSEE v. GRADY ALTON VEST**

**Appeal from the Circuit Court for Henderson County
Nos. 17043-2, 17064-2     Donald H. Allen, Judge**

_____

**No. W2018-01694-CCA-R3-CD**

_____

Defendant, Grady Alton Vest, was indicted by the Henderson County Grand Jury for four counts of rape of a child and four counts of incest. Defendant was convicted as charged following a jury trial. The trial court sentenced Defendant to 33 years for each rape of a child conviction and five years for each incest conviction, with two of his 33-year sentences to run consecutively, for a total effective sentence of 66 years' incarceration. In this appeal as of right, Defendant contends that the evidence was insufficient to support his convictions, and his effective sentence is excessive. Following our review of the entire record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

Michael Thorne, Lexington, Tennessee, for the appellant, Grady Alton Vest.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Evidence presented at trial*

The victim of the offenses in this case is Defendant's daughter, to whom we will refer by her initials, A.V. Dr. Lisa Piercey, the medical director of the Madison County Child Advocacy Center, testified that she examined A.V. Dr. Piercy testified that she

asked A.V. why she was there to see her, and A.V. replied, "My dad, [Defendant], has been doing stuff to me for a long time." Dr. Piercey testified,

> . . . . she said that she remembered the first time that it had happened, she was six years old and that [Defendant] "started talking to [her] about it and showed [her] his parts."
>
> And she said that type of behavior went on for a couple of years until she was eight years old and then she said, "He started making [her] suck his stuff and then he touched [her] in [her] bad part with his hand and with his bad part."
>
> And when children talk about being touched, I typically ask them, what did that feel like or what do you remember about that, and she said that she remembers that "the first couple of times that he put his bad part inside [her], [her] bad part bled. [She] fe[l]l asleep in the tub afterwards," she thought it was around 2 a.m., "and woke up with the water all bloody."
>
> And then she went on to say, "white stuff would come out of his bad part, and it would go on the bed, on the floor, and one time in [her] mouth." I asked her about a condom. Most 11-year[-]olds don't know what that is or some of them don't, and so, we talked about any kind of lotion or covering or anything on his private, and she denied that he had ever put anything like that on there.
>
> She did relay that the most recent incident prior to when I saw her was two weeks, so I saw her on March 4th, so maybe around mid to late February, 2016, and she said that they had really gone down, and these are my words not her['s], she described that they had gone down in frequency over the last couple of years. She said that "they happened about every other day until [they] moved in with [her step-mother] and then it only has happened twice since [they had] been at her house."

Also during the interview, A.V. recalled that Defendant choked her once "because [she] refused to do it." A.V. also described an incident that happened when she was in third grade when Defendant made her "suck one of his friend's, Randall's, things." Defendant told A.V., "he'd choke me until I died if I didn't." Dr. Piercey testified that A.V. told her that in August, 2014, Defendant video recorded her "sucking his thing on his cellphone, but then he deleted it and went to the recently deleted folder and deleted it there, too."

Dr. Piercey conducted a "full body medical exam" on A.V.  Dr. Piercey testified that A.V. "became very frightened and shaking and crying during the genital exam and that's somewhat unusual[.]"  Dr. Piercey testified that A.V. consented to the exam even though she was "fairly traumatized."  Dr. Piercey observed that a portion of A.V.'s hymen was missing.  She testified "that's considered definitive evidence of penetrating trauma."  Dr. Piercey testified that her medical findings were consistent with the history A.V. gave.  Dr. Piercey's assessment and diagnosis "was that of child sexual abuse."

A.V. testified that she was 13 years old at the time of trial.  She testified that she did not know when the last time she saw her mother.  She lived with her father, Defendant, after her mother left.  A.V. remembered talking to Ms. Gibson, a forensic interviewer, and she testified that everything she told Ms. Gibson "was the truth."  She denied that anyone other than Defendant had ever touched her inappropriately.  She testified that she had three brothers but denied that any of them had ever molested her.

A.V. testified that her step-mother, Idonnis, was the first person she told what Defendant had done to her.  She testified that she told her because she "didn't want it to go on anymore."  A.V. testified that she spoke to police the day after she told her step-mother.  A.V. had been living with her step-mother since "all of this happened."  A.V. remembered talking to Dr. Piercey and testified that everything she told Dr. Piercey was true.

On cross-examination, A.V. denied that she stated in her interview with Ms. Gibson that Defendant recorded video of her.  She testified, "I said he was watching videos.  I didn't say that he was recording anything."

Randall Vaughn testified that he was incarcerated at the Henderson County Jail for the "[s]ale and delivery of morphine."  He also affirmed that he was on the sex offender registry for a statutory rape conviction.  He testified that he was convicted for having sex with a 17-year-old girl when he was 21 years old.  Mr. Vaughn testified that he had spoken to an investigator about an incident involving Defendant.  He testified that he had not been offered anything in exchange for his testimony.

Mr. Vaughn testified that he met Defendant "through a family in-law, him and his wife resided over there."  He testified that he sold methamphetamines to Defendant and his wife, "and then it come out, you know, they was swingers."  He testified, "one thing led to another, I sold him some meth, and one thing led to another, he wanted me to have sex with his wife."  Mr. Vaughn testified that he had sex with Defendant's wife while Defendant watched.  He testified,

[w]hen it was over, she got up and went to the other room, and I got up to [go to] the bathroom to get my stuff. When I come back in, he told me to sit down, and he was sitting on the bed, and he said, "Sit your ass down." I looked over there. He said, "Look, just like her mama." And he had his daughter sitting there between his legs. [She was] [g]iving him oral sex.

Mr. Vaughn testified that he "[f]reaked out." He testified that Defendant "wanted her to do the same to [him]." He walked out of the room and told Defendant's wife, "You turn him in or I will." Mr. Vaughn testified that Defendant contacted him about a week later and asked for more drugs. Mr. Vaughn told Defendant, "Look, I don't mess with it no more. I don't do it no more. I'm through with it. I don't need to mess with you no more." He testified that Defendant told him he was having an "orgy" and that "[his] daughter [was] involved." Mr. Vaughn testified that he hung up on Defendant and had not spoken to him or seen him since then. He testified that he could not "say whether [A.V.] did or didn't [perform oral sex on him], but she got very close before [he] got up and left." He testified, "I can't honestly tell you whether she did or didn't touch me."

Mark Bates was also an inmate at the Henderson County Jail at the time of Defendant's trial. He testified that he was serving a three-year sentence for identity theft. Mr. Bates testified that he met Defendant in jail in January, 2017. He testified that Defendant came to his cell "three or four times a week." Regarding Defendant's relationship with A.V., Defendant told Mr. Bates "that was his baby girl, and he's going to do anything to get back with her." Mr. Bates testified that Defendant told him about "three or four" incidents between Defendant and A.V. On the first occasion, Defendant was drinking alcohol and using methamphetamines, and he raped A.V. in her bedroom. Defendant told Mr. Bates that "there was a lot of blood" and that Defendant made A.V. clean the blood with a curtain and put the curtain behind a chest of drawers. Mr. Bates testified that Defendant warned A.V. "not to tell anyone, to tell people that she had started her period." The second occasion Defendant told Mr. Bates about "happened in the truck that he blamed it on a work-related incident – accident." Defendant told Mr. Bates "that they was on their way from someone's house," and Defendant pulled over and raped A.V. Defendant told his mother-in-law that he "got hurt at work" to explain the blood in his truck. About his arrest, Defendant told Mr. Bates that he "knew that this was going to happen but not this soon." Defendant told Mr. Bates "that the voices in his head made him [rape A.V.] and that he would black out." Mr. Bates testified that he and Defendant had "[m]ultiple" conversations about Defendant's behavior, and "it was the same story, pretty consistent over and over." Mr. Bates testified that he had not been promised anything in exchange for his testimony, and that he contacted the district

attorney's office and came forward because "[j]ustice needs to be served, and I was done the same way as a child."

Investigator David Dowdy, of the Henderson County Sheriff's Department, handled the investigation of the allegations against Defendant. Investigator Dowdy testified that he established the timeframe for the four counts of rape and incest based on A.V.'s statements in the forensic interview. Defendant was arrested by United States Marshalls Task Force at the Pathways mental facility. Investigator Dowdy testified that at the time of Defendant's arrest, Defendant "kind of appeared . . . like he wasn't coherent, or – or he was out of it or possibly under the influence . . . ." Investigator Dowdy spoke to Defendant again at a later date. He testified that Defendant stated that he was "bipolar," but he was not seeing a doctor. Defendant stated that he had "blackouts" and that he had gone to Pathways because "he needed help." He testified that Defendant "never mentioned voices."

Investigator Dowdy obtained a search warrant for Defendant's electronic devices. He recovered a laptop computer and a cell phone, but no evidence of any of Defendant's charges was found on either device. Investigator Dowdy also collected a brown blanket from Defendant's residence, but he did not have it tested for DNA because Ms. Vest stated that she had washed the blanket. Investigator Dowdy also testified that he "would absolutely expect to find [Defendant's] DNA on his own blanket." Investigator Dowdy testified that the truck in which A.V. stated one of the incidents occurred had been repossessed and was not available to examine for DNA.

Investigator Dowdy testified that Defendant described A.V. as "a good girl," and he stated that they had a good relationship. He testified that Defendant "didn't really understand why she would bring these allegations" against him.

Defendant did not testify or present any other proof at trial.

### Sentencing hearing

At Defendant's sentencing hearing, the trial court admitted the presentence report as an exhibit. No other proof was presented. The trial court stated that it had considered the proof presented at trial, the presentence report, the principles of sentencing, the arguments of counsel, statistical information provided by the Administrative Office of the Courts, and the nature of the offenses. The court noted that the victim was Defendant's biological daughter and that she suffered "an extended period of sexual penetration that began when [the victim] was approximately 8 years of age and continued up until she was 11 years of age." The trial court found that Defendant had a history of criminal convictions. The trial court noted that Defendant's presentence report showed several

prior misdemeanor convictions, and the court stated that it gave "those great weight for enhancement purposes."

The State sought application of enhancement factor (7), that "[t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement[.]" The trial court declined to apply the enhancement factor, finding, "certainly, these offenses of rape of a child, these offenses of incest, were certainly done for the defendant's desire for pleasure or excitement, but I feel like that that's really part of the – part of the nature of the offenses for which he's been convicted."

The trial court applied enhancement factor (14), that Defendant abused a position of private trust, emphasizing that Defendant is the biological father of the victim. The trial court stated, "This child unfortunately had to depend on her father. She had no mother in her life at that time period, and she was subject to whatever her father ordered [her] to do." The court found that Defendant violated A.V.'s trust in him by "sexually abusing [her] from a very young age."

The trial court noted that Defendant was "apparently a fairly intelligent individual" and that "he had a work history," but the trial court declined to give any mitigating factors much weight. The trial court imposed sentences of 33 years for each of Defendant's rape of a child convictions and five years for each of Defendant's incest convictions.

The trial court ordered that two of Defendant's 33-year sentences run consecutively, resulting in a total effective sentence of 66 years in confinement. Pursuant to Tennessee Code Annotated section 40-35-115(b)(5), the court found that Defendant was convicted of two or more offenses involving the sexual abuse of a minor. Additionally the trial court found that the sexual abuse "was aggravated, and the aggravat[ing] circumstances being the seriousness of these injuries to the child," noting the victim's psychological trauma and physical injuries. The court also considered "the time[ ]span of [D]efendant's undetected sexual activity," noting that the abuse occurred over several years.

### Analysis

*Sufficiency of the evidence*

Defendant contends that the evidence is insufficient to sustain his convictions because the victim's and other witnesses' testimony was inconsistent and not credible. The State responds that the evidence presented established the statutory elements for the

offenses beyond a reasonable doubt, and that any inconsistencies in the testimony were resolved by the jury's verdict. We agree with the State.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see* Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005); *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *Wagner*, 382 S.W.3d at 297 (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)).

Defendant was charged with and convicted of rape of a child and incest. In order to sustain a conviction of rape of a child, the State was required to prove beyond a reasonable doubt that (1) the Defendant unlawfully sexually penetrated the victim, (2) who was less than thirteen years old, and that (3) the Defendant acted intentionally, knowingly, or recklessly. T.C.A. § 39-13-522. Sexual penetration is defined, in relevant part, as "sexual intercourse, cunnilingus, [or] fellatio." T.C.A. § 39-13-501(7). Incest, as

relevant here, is established by proving beyond a reasonable doubt that the Defendant engaged in sexual penetration as previously defined in section 39-13-501, with the victim, knowing the victim to be, without regard to legitimacy . . . the defendant's natural child. T.C.A. § 39-15-302.

Defendant challenges the victim's credibility based on inconsistencies in her testimony regarding whether Defendant made a video recording of himself committing sexual acts against the victim. Defendant argues that the victim's credibility is further damaged by the lack of pornographic material found by police on Defendant's cell phone. Defendant also challenges the credibility of the two "jailhouse informants," Mr. Vaughn and Mr. Bates, who testified for the State. Any inconsistencies in the testimony at trial were resolved by the jury in favor of the State. Likewise, the credibility of all the witnesses was resolved by the jury.

Defendant's challenges relate to the credibility of witnesses, the weight and value to be given the evidence, and factual issues, all of which are resolved by the jury. *Bland*, 958 S.W.2d at 659. It was within the province of the jury to accredit the testimony at trial.

Taken in the light most favorable to the State, the proof at trial established that the victim disclosed several incidents of sexual abuse that occurred while she lived with Defendant, her father. A.V. testified in detail about the abuse. While the victim's testimony alone is sufficient to support Defendant's convictions and requires no corroboration, medical evidence was introduced which supports A.V.'s testimony. *See State v. Elkins*, 102 S.W.3d, 582-83 (Tenn. 2003) (evidence was sufficient to support conviction for rape of child, despite fact that victim's testimony contained some inconsistencies). Mr. Vaughn testified that he saw A.V. perform fellatio on Defendant and that Defendant encouraged Mr. Vaughn to have A.V. perform fellatio on Mr. Vaughn. Mr. Bates testified that Defendant admitted several acts of sexual abuse against A.V. to him while they were incarcerated together. We conclude that the evidence is sufficient to support the convictions. Defendant is not entitled to relief.

*Sentencing*

Defendant contends that the trial court erred by enhancing his sentences above the minimum within the range for his convictions. The State argues that Defendant's sentence is proper.

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). In sentencing a

defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the result of the validated risk and the needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. §§ 40-35-102, -103, -210; *see also State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on an appellant to demonstrate the impropriety of the sentence. *See* T.C.A. § 40-35-401, *Sentencing Comm'n Cmts*.

As a Range II multiple offender convicted of a Class A felony, Defendant was subject to a sentencing range of twenty-five to forty years for his rape of a child convictions. *See* T.C.A. §§ 39-13-522(b)(1), 40-35-112(b)(1). In asserting that his sentences are excessive, Defendant claims that the trial court misapplied two enhancement factors. Defendant contests the trial court's application of enhancement factor (1), that Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. He contends that he "had a very minor criminal record at the time of sentencing yet the court imposed that factor and gave it great weight in enhancing the sentence eight (8) years above the minimum sentence." The trial court observed that Defendant had a pending charge for simple assault and that he had prior convictions for public intoxication, possession of marijuana, driving under the influence of an intoxicant, and passing a worthless check. The trial court noted that all of Defendant's prior convictions were misdemeanors, but the court gave "that [criminal] history great weight for enhancement purposes."

Defendant also contends that the trial court erred by considering enhancement factor (14), that Defendant abused a position of private trust "because he was convicted of incest which itself contains the abuse of private trust[.]" At sentencing, the State sought application of enhancement factor (14) to the child rape sentences, noting that the factor was not applicable to the incest sentences because it was an element of the offense. On appeal, however, the State cites *Jeffery Brian Parks*, No. M2003-02002-CCA-R3-CD, 2004 WL 1936404 (Tenn. Crim. App. Aug. 30, 2004), in which a panel of this court found the "position of trust" enhancement factor to be applicable in cases of incest. The panel explained:

> With regard to application of this factor to the Appellant's incest convictions, this court has consistently held that "the existence of a position of trust is not an essential element of the crime of incest because

[Tennessee Code Annotated section] 39-15-302 prohibits sexual penetrations among a wide [range of] relations, including parent and child."

*Id*. at * 4 (citations omitted). Our courts have consistently held that a parent/child relationship establishes a position of trust for application of enhancement factor (14). *State v. Gutierrez*, 5 S.W.3d 641, 645 (Tenn. 1999) (citing *State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996)).

We conclude that the trial court properly sentenced Defendant. The trial court considered the relevant principles and sentenced the Defendant to a within range sentence. The trial court stated on the record its reasons for the sentences it imposed; thus, the trial court's sentencing decisions are entitled to a presumption of reasonableness. Defendant has failed to establish any abuse of discretion. The evidence supports the trial court's application of enhancement factors (1) and (14). T.C.A. § 40-35-114. The evidence showed that Defendant had a prior history of misdemeanor convictions, and the evidence clearly established that Defendant occupied a position of trust.

In any event, as our supreme court has explained, a trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed. . . . So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Bise*, 380 S.W.3d at 706. To the extent that Defendant complains about the weight afforded these enhancement factors, "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).

The record also supports the trial court's imposition of consecutive sentencing. Tennessee Code Annotated section 40-35-115(b)(5) allows for consecutive sentencing once a defendant has been convicted of two or more "statutory offenses involving sexual abuse of a minor with the consideration of . . . the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims." *Id*.; *see also State v. Doane*, 393 S.W.3d 721, 737 (Tenn. Crim. App. 2011). The trial court noted that the victim suffered physical injuries, including "bleeding on several of these incidences where she says in [the presentence] report that it was to the point where it hurt her to even walk. [She] [t]alked about how her stomach would hurt after he had raped her on these various occasions." The trial court also noted that the presentence report stated that the victim had been to "trauma therapy" for the mental damage caused by Defendant's actions. We conclude that consecutive sentencing was appropriate. Defendant is not entitled to relief as to this issue.

CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.


_____
THOMAS T. WOODALL, JUDGE